**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| | : |
| | : |
| Plaintiff, | : Civil Action No. |
| | : |
| v. | : Complaint for Violations of the |
| | : Federal Securities Laws |
| | : |
| GEORGE HECKLER, | : Jury Trial Demanded |
| | : |
| Defendant. | : |
| | : |
| | : |
| | : |
| | : |

Plaintiff Securities and Exchange Commission (the "Commission"), One Penn Center, 1617 JFK Boulevard, Suite 520, Philadelphia, Pennsylvania 19103, alleges as follows against defendant George Heckler ("Heckler"), whose last known address is:

a.  George Heckler
5 ½ Alexander Street
Charleston, SC 29401

## SUMMARY

1.      Between 2009 and 2019, Heckler defrauded investors and CV Special Opportunity Fund LP ("CV Special") and Cassatt Short Term Trading Fund LP ("Cassatt") (together, the "Funds"), two hedge funds he advised and controlled.  He repeatedly misled investors by telling them they were earning consistent gains while, in reality, their money had not been invested as promised (or at all), and the value of the money that had been invested was decimated by poor performing investments.

2.      Heckler helped form Cassatt and CV Special as a means to shift and cover-up investor losses incurred by a predecessor fund that was also controlled by Heckler.  After transferring poorly performing assets of the predecessor fund to CV Special and Cassatt, Heckler lied to investors about nearly every aspect of the Funds, including their basic purpose, investment strategy, and poor performance.

3.      Heckler, along with the fund administrator of Cassatt and CV Special ("Individual 1"), concealed the truth about the Funds by, among other things, providing investors with false account statements and Forms K-1 showing that Cassatt and CV Special consistently generated positive returns.  Heckler also frequently used new investor capital raised through Cassatt to redeem existing investors.

4.      With little liquid assets available in the Funds, Heckler fraudulently solicited additional capital through three other entities, TA 1 LLC ("TA 1"), CVAF 1 LLC ("CVAF"), and School Street Capital LLC ("School Street") (together, the "Heckler Entities").  Heckler failed to invest those funds as promised.  Instead, he used the new investments to repay earlier Cassatt and CV Special investors.

5.      Over the course of the fraud, Heckler raised at least $90 million through the Funds and the Heckler Entities.  Of this amount, Heckler used more than $30 million to repay prior investors.  In that same time period, Heckler took more than $1 million for himself and his family in the form of purported fees or distributions.

6.      By engaging in the conduct described in this Complaint, Heckler violated, directly or indirectly, and unless enjoined will continue to violate, Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of

2

1934 ("Exchange Act" [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5],

Sections 206(1), (2), and (4) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C.

§§ 80b-6(1), (2), and (4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## JURISDICTION AND VENUE

7.      The Commission brings this action pursuant to Sections 20(b) and 20(d) of the

Securities Act [15 U.S.C. §§ 77t(b), (d)], Sections 21(d) and 21(e) of the Exchange Act [15

U.S.C. §§ 78u(d), (e)], and Sections 209(d) and 209(e) of the Advisers Act [15 U.S.C. §§ 80b-

9(d), (e)] to enjoin such acts, practices, and courses of business, and to obtain disgorgement,

prejudgment interest, civil money penalties, and such other and further relief the Court may deem

just and appropriate.

8.      This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and

22(a) of the Securities Act [15 U.S.C. §§ 77t(b), (d), and 77v(a)]; Sections 21(d), 21(e), and 27

of the Exchange Act [15 U.S.C. §§ 78u(d), (e), and 78aa]; and Sections 209(d), 209(e), and 214

of the Advisers Act [15 U.S.C. §§ 80b-9(d), (e), 80b-14.  Heckler, directly or indirectly, made

use of the mails, or the means and instrumentalities of interstate commerce, or the facility of

national security exchanges, in connection with the transactions, acts, practices, and courses of

business alleged in this complaint.

9.      Venue in this district is proper under Section 22(a) of the Securities Act [15

U.S.C. § 77v(a), Section 27 of the Exchange Act [15 U.S.C. § 78aa], Section 214 of the Advisers

Act, and 28 U.S.C. § 1391(b), because certain acts, practices, transactions, and courses of

business constituting violations of the federal securities laws occurred within the District of New

Jersey.  In connection with the fraud, Heckler sent and/or caused to be sent, wire transmissions that went through servers located in New Jersey.

## THE DEFENDANT

10.     George Heckler, age 64, resides in Charleston, South Carolina.  During the relevant period, Heckler was the adviser to the Funds, controlled the Heckler Entities and had authority over all uses of investor funds described herein.

## RELEVANT ENTITIES

11.     Cassatt is a Pennsylvania limited partnership established in 2009 and operated as a purported hedge fund.  Heckler was the adviser to the fund and made all of Cassatt's investment decisions.

12.     Cassatt Fund Partners LLC ("Cassatt Partners"), is a Pennsylvania limited liability company established in 2006 and was the investment adviser and general partner of Cassatt. Since 2011, Heckler was the only member of and associated with Cassatt Partners.

13.     CV Special is a Delaware limited partnership established in 2010 and operated as a purported hedge fund.  Heckler acted as the adviser to CV Special and made all of CV Special's investment decisions.

14.     CV Fund Partners LLC ("CV Partners"), is a Pennsylvania limited liability company established in 2010 and was the investment adviser and general partner of CV Special. Heckler was a member of and associated with CV Partners.

15.     TA 1 LLC ("TA 1") is a Pennsylvania limited liability company.  During the relevant period, Heckler had authority over the use of at least some investor funds in TA 1.

4

16.     CVAF LLC ("CVAF") is a Delaware limited liability company controlled by Heckler.

17.     School Street Capital LLC ("School Street") is a Pennsylvania limited liability company controlled by Heckler.

18.     On information and belief, the entities listed above in paragraphs 11 through 17 are effectively defunct.  They have no operations and few assets.

## FACTS

### A. Background

19.     In 1998, Heckler, along with three other individuals, formed Conestoga Partners Holdings LP ("Conestoga"), a private hedge fund, largely to manage the money of friends and family members.  Heckler acted as its adviser, responsible for all of Conestoga's investment decisions, and Individual 1 was Conestoga's internal administrator.

20.     By 2008, Heckler had caused Conestoga to invest over $34 million of investor capital, well over half of its total assets, in one investment fund that invested in real estate. Beginning in January 2009, this investment began suffering massive losses.  Heckler was in near constant contact with the manager of that real estate investment fund and knew at this time that the value of Conestoga's largest investment had declined significantly, additional losses were likely, and its remaining position was highly illiquid.

### B. Heckler Resorts to Fraud to Conceal Conestoga's Losses

21.     Heckler did not disclose to Conestoga's investors that the value of Conestoga's largest asset was cratering.  Instead, in 2009 and 2010, confronted with the prospect of having to close Conestoga and being unable to redeem existing investors, with assistance from Individual

5

1, among others, Heckler formed Cassatt and CV Special to conceal these losses and lull existing Conestoga investors into not seeking to redeem their investments.  Heckler then transferred the assets and obligations of Conestoga to Cassatt.

    **1.**  **Heckler Lied to Investors Regarding the Funds' Investment Activities**

22.     Heckler controlled both Cassatt and CV Special.  He had responsibility for identifying and conducting due diligence regarding potential investments, and managing investment decisions for the Funds.  He monitored the Funds' performance and liquidity and directed payments to be made on the Funds' behalf.  Heckler also had ultimate authority over the content of communications to investors.

23.     Individual 1 operated as the internal administrator for both Cassatt and CV Special and performed internal accounting and investor reporting for the Funds.  Individual 1 was also the authorized signatory on the Funds' bank and brokerage accounts and frequently moved money through those accounts at Heckler's instruction.

24.     Heckler falsely described the Funds' objectives to investors, representing orally and in writing to both Conestoga investors and other potential investors that Cassatt and CV Special would use their investments to trade liquid securities through certain particular strategies, which would be managed by Heckler.

25.     Cassatt's offering documents state that the fund specialized "in very short term trading strategies with a concentration in equity securities."

26.     Similarly, Individual 1 emailed at least one Conestoga investor, copying Heckler, stating that "Cassatt is made up of approximately 45 individual traders.  They are all good but

some are better than others.  I am putting a structure in place so that certain investors can get exposure to only the top guys through [CV Special]."

27.     These representations were false.  For the most part, the Funds did not engage in securities trading.  Although CV Special maintained a brokerage account from November 2010 to January 2016, there was never any trading activity in the account.  In fact, CV Special made less than $1 million in new investments of any kind.  Similarly, while Cassatt engaged in some securities trading, its strategies were unsuccessful.  By the end of 2014, Heckler had closed all of Cassatt's brokerage accounts and caused Cassatt to cease all trading activities.

### 2.   Heckler Lied to Investors Regarding the Funds' Performance

28.     Heckler routinely lied to investors by reporting fictitious gains instead of losses incurred by the Funds from at least 2011 through the reporting period of the third quarter in 2018.  Heckler simply selected a performance return each month for the Funds and then created account statements reflecting the phony return he picked.  Individual 1 prepared the monthly return and capital account balances to be published via investor account statements, which Heckler reviewed and approved prior to the dissemination of statements to investors.  These account statements led investors to believe that their investments in Cassatt and CV Special were constantly gaining in value, while in reality, they were sharply declining.

29.      For example, by December 2012, the actual combined asset value of the Funds was $51.5 million, but Heckler reported a cumulative value of $81 million in assets to Cassatt and CV Special investors – a $29.5 million overstatement.

30.     Similarly, Heckler reviewed and approved Forms K-1 for CV Special and Cassatt investors that falsely represented the year-end performance of each investor's capital account.

**3.** **Heckler Misappropriated Investor Money Raised Through the Funds and the Heckler Entities**

31.     Between 2011 and 2019, Heckler raised at least $90 million through CV Special, Cassatt, and the Heckler Entities.  Unbeknownst to investors, more than one-third of this money was not invested at all, but used to repay earlier investors and Heckler's own debts.

32.     For example, on January 17, 2012, "Investor A", an individual, invested $2 million with Cassatt believing her money would be invested in publicly-traded securities, using short-term trading strategies managed by Heckler.  However, Heckler never directed Investor A's $2 million investment to be deposited in a brokerage account, or otherwise invested. Instead, two days after receiving the funds, Heckler caused Cassatt to send the money to a CV Special bank account and those funds were immediately used to make a $2 million redemption payment to one of Heckler's relatives, who was a CV Special investor.

33.     Similarly, in September 2014, Investor A invested an additional $9.1 million in Cassatt, believing those assets would be invested using Heckler's trading strategies.  Heckler did not disclose to Investor A that, at the time of this investment, Cassatt no longer had any open brokerage accounts or other direct trading capabilities.  Instead of devoting Investor A's investment to securities trading, Heckler used $4.6 million of Investor A's money to repay existing CV Special investors and the remainder to satisfy other obligations he owed unrelated to Cassatt.

34.     In 2015, Heckler began using the Heckler Entities (TA 1, CVAF, and School Street) to raise additional money from at least two large investors so he could continue to make

Ponzi-like payments to Cassatt and CV Special investors as redemption requests arose, and prolong his fraud.

35.     One such investor, "Investor B", was an investment adviser who managed several hedge funds.  After multiple discussions directly with Heckler, Investor B created a new hedge fund and agreed with Heckler that he would raise and invest the hedge fund's capital with TA 1 in order to obtain exposure to a particular trading strategy touted by Heckler.

36.     In December 2015, Investor B caused his hedge fund to invest $5.6 million in TA 1.  Heckler had represented to Investor B that the investment would be transferred to a TA 1 brokerage account to be used by a purported network of traders managed by Heckler to trade in the agreed upon trading strategy.

37.     In July 2016, Investor B caused his hedge fund to invest an additional $4.5 million into TA 1 pursuant to the same agreement.  These investments first took the form of a participation agreement between TA 1 and the hedge fund and were later converted to a note that would pay the hedge fund 12% annual interest on the capital that TA 1 was purportedly trading in the agreed upon trading strategy.

38.     In reality, however, Investor B's investments in TA 1 were never used to trade in the agreed upon trading strategy.  Heckler used nearly all the funds to repay his own loans and make redemption payments to a large institutional investor of Cassatt.

39.     Until at least December 2017, Heckler provided Investor B with false account statements indicating that the investment in the TA 1 trading strategy was increasing in value.

40.     Between January 2017 and September 2018, Investor B caused his hedge fund to make nine additional investments totaling $17.5 million in the two other Heckler Entities, CVAF

9

and School Street, pursuant to an agreement providing that the investments would be used for securities trading.

41.     However, Heckler never used any of the $17.5 million for securities trading. Instead, Heckler used nearly $5 million of that money to redeem CV Special and Cassatt investors.  Heckler used the remaining funds for other unapproved purposes, including making illiquid investments and paying off unrelated loans.  Despite not using any of Investor B's capital for the investments Heckler promised and Investor B intended, Heckler caused phony account statements to be sent to Investor B indicating that the value of the investments had grown.

42.     Similarly, Heckler raised an additional $2 million from another investor, "Investor C", who traded and invested in trading strategies through various entities Investor C controlled. Based on representations by Heckler, Investor C caused one of his entities to make two $1 million investments in CVAF in March and April 2017.  Heckler specifically represented to Investor C that the $2 million invested would be used for a specific securities trading strategy managed by Heckler.  However, Heckler never invested these monies.  Instead, Heckler used Investor C's $2 million to repay a debt he had incurred unrelated to Investor C.

43.     Over the course of his fraud, in addition to the purported redemption Heckler paid to one of his relatives who had invested with him, Heckler took more than $1 million for himself and his family in the form of purported fees or distributions.

C. **Heckler's Fraud Collapses**

44.     In December 2017, Individual 1 resigned as the internal administrator to both Cassatt and CV Special.  In early 2018, Heckler informed investors that he intended to dissolve

Cassatt and CV Special and that, pursuant to the Funds' offering documents, time would be required to liquidate the Funds and conduct a final distribution of the Funds' assets.

45.     Contrary to Heckler's statements to investors, he never took steps to formally place the Funds in liquidation, nor could he because the Funds' assets were largely illiquid, and of little value—worth tens of millions less than he had been reporting to investors—making it impossible to return the capital that his investors believed they were owed.  Instead, Heckler prolonged the fraud for over a year.

46.     Heckler perpetuated the fraud by establishing himself as the signatory on the Funds' bank accounts and the bank accounts of CVAF and School Street.  With control of the bank accounts, he continued to redeem certain investors using the money he stole from Investor B.  In addition, Heckler continued to deceive investors with fabricated account statements. Utilizing a schedule of purported account balances that had been created prior to Individual 1's separation from the Funds, Heckler created and disseminated account statements falsely showing continued gains for the Funds from the fourth quarter of 2017 through the third quarter of 2018.

47.     In addition, throughout 2018, Heckler made false statements directly to investors orally and in writing assuring them that their money was safe and blaming the delay in returning their capital on Individual 1's departure.

48.     For certain investors, Heckler agreed to collateralize their investment accounts by pledging his personal assets until their money was returned.  However, Heckler provided those investors with falsified collateral schedules, listing "collateral" that was overvalued or did not even belong to him.

11

D.  **Heckler Violated The Anti-Fraud Provisions of the Federal Securities Laws**

49.     During the relevant period, Heckler was the adviser to the Funds, owned and controlled CVAF and School Street, and had authority over all uses of investor funds described herein.

50.     All of the misrepresentations and omissions set forth herein, individually and in the aggregate, are material.  A reasonable investor would have considered the misrepresented facts and omitted information important in deciding whether or not to purchase securities from Heckler.  The disclosure of the omitted facts or accurate information would have altered the "total mix" of information available to investors.

51.     In connection with the conduct described herein, Heckler acted knowingly and/or recklessly.  Among other things, Heckler knew or was reckless in not knowing that he was engaging in deceptive conduct and making material misrepresentations and omitting material facts in connection with selling or offering of securities.

52.     Heckler had ultimate authority for false and misleading statements and omissions made orally and in writing to current and prospective investors.

53.     Through his material misrepresentations and omissions, Heckler obtained money or property from investors.

54.     Through this conduct, Heckler employed a device, scheme or artifice to defraud and engaged in acts, transactions or courses of business that operated as a fraud or deceit upon his clients.

55.     Heckler acted as an investment adviser during the relevant period by providing investment advisory services for a fee.

12

56.     Heckler provided investment advisory services to pooled investment vehicles, Cassatt and CV Special.

57.     In connection with the conduct described herein, Heckler breached the fiduciary duty he owed to his investment advisory clients.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Violations of Section 17(a) of the Securities Act

58.     The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1 through 57, above, as if the same were fully set forth herein.

59.     By engaging in the conduct alleged herein, Heckler knowingly or recklessly or, with respect to subparts b and c below, negligently, in the offer or sale of securities, directly or indirectly, singly or in concert, by the use of the means or instruments of transportation or communication in interstate commerce, or the means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange:

a.     employed devices, schemes or artifices to defraud;

b.     obtained money or property by means of, or made, untrue statements of material fact, or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

c.     engaged in acts, transactions, practices, or courses of business that operated as a fraud or deceit upon offerees, purchasers, and prospective purchasers of securities.

60.     By engaging in the foregoing conduct, Heckler violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

13

## SECOND CLAIM FOR RELIEF
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder

61.     The Commission re-alleges and incorporates by reference each and every

allegation in paragraphs 1 through 57 inclusive, as if they were fully set forth herein.

62.     By engaging in the conduct alleged herein, Heckler directly or indirectly, by use

of the means or instruments of interstate commerce or of the mails, or the facility of a national

securities exchanges, in connection with the purchase and sale of securities described herein,

knowingly or recklessly:

        a.     employed devices, schemes, or artifices to defraud;

        b.     made untrue statements of material facts and omitted to state material facts
necessary in order to make the statements made, in light of the circumstances under which they
were made, not misleading; and/or

        c.     engaged in acts, practices, and courses of business which operated or would
operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

63.     By reason of the foregoing, Heckler, directly and indirectly, violated and, unless

enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and

Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## THIRD CLAIM FOR RELIEF
### Violations of Section 206(1) and (2) of the Advisers Act

64.     The Commission re-alleges and incorporates by reference each and every

allegation in paragraphs 1 through 57, above, as if the same were fully set forth herein.

65.     By engaging in the conduct alleged herein, Heckler knowingly or recklessly or,

with respect to subpart b below, negligently, as an investment adviser, directly or indirectly, by

use of the means or instrumentality of interstate commerce or of the mails:

> a. employed devices, schemes or artifices to defraud any client or prospective client; and/or

> b. engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon any client or prospective client.

66. By engaging in the foregoing conduct, Heckler violated, and unless restrained and enjoined will continue to violate, Sections 206(1) and (2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and (2)].

## FOURTH CLAIM FOR RELIEF
### Violations of Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder

67. The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1 through 57, above, as if the same were fully set forth herein.

68. Heckler, by engaging in the conduct alleged herein, directly or indirectly, by use of means or instrumentalities of interstate commerce or use of the mails, while acting as an investment adviser, engaged in acts, practices, or courses of business that were fraudulent, deceptive, or manipulative.

69. Heckler, while acting as an investment adviser to pooled investment vehicles: (a) made untrue statements of material facts or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading, to investors or prospective investors in the pooled investment vehicle; or (b) engaged in acts, practices, or courses of business that were fraudulent, deceptive, or manipulative with respect to investors or prospective investors in the pooled investment vehicle.

70.     By reason of the foregoing, Heckler violated and, unless restrained and enjoined, will continue to violate Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court enter a final judgment:

### I.

Permanently restraining and enjoining Heckler from, directly or indirectly, violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Sections 206(1), (2), and (4) of the Advisers Act [15 U.S.C. §§ 80b-6(1), (2), and (4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

### II.

Ordering Heckler to disgorge all ill-gotten gains or unjust enrichment with prejudgment interest, to effect the remedial purposes of the federal securities laws;

### III.

Ordering Heckler to pay civil penalties pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)]

### IV.

Granting such other and further relief as this Court may determine to be just and necessary.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands that this case be tried to a jury.

Respectfully submitted,

By: _John V. Donnelly III_____

Scott A. Thompson
John V. Donnelly III

Securities and Exchange Commission
1617 JFK Blvd., Suite 520
Philadelphia, PA 19103
Telephone:  (215) 597-3100
Facsimile:  (215) 597-2740
Email:  DonnellyJ@sec.gov

**ATTORNEYS FOR PLAINTIFF
SECURITIES AND EXCHANGE
COMMISSION**

Dated: March 9, 2021

17

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff,<br><br>  v.<br><br>GEORGE HECKLER,<br><br>        Defendant. | Case No.<br><br>**DESIGNATION OF AGENT FOR SERVICE** |

Pursuant to Local Rule 101.1(f), because the Securities and Exchange Commission (the "Commission") does not have an office in this district, the United States Attorney for the District of New Jersey is hereby designated as eligible as an alternative to the Commission to receive service of all notices or papers in the captioned action.  Therefore, service upon the United States or its authorized designee, David Dauenheimer, Deputy Chief, Civil Division, United States Attorney's Office for the District of New Jersey, 970 Broad Street, 7th Floor, Newark, NJ 07102 shall constitute service upon the Commission for purposes of this action.

Respectfully submitted,

s/ John Donnelly
John Donnelly

Attorney for Plaintiff
U.S. Securities and Exchange Commission
Philadelphia Regional Office
1617 JFK Boulevard, Suite 520
Philadelphia, PA  19103
Telephone:  (215) 597-3100
Facsimile:  (215) 597-2740
DonnellyJ@sec.gov

18